UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH RICHARD CABRAL,

   Petitioner,

v.                                                                    CASE NO. 8:19-cv-1085-T-02SPF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

   Respondent.
_____/

## ORDER

Before the Court is Petitioner Kenneth Richard Cabral's *pro se* petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.  Mr. Cabral is serving twelve and a half years in state prison for DUI manslaughter.  After careful consideration of the petition (Dkt. 1), the response (Dkt. 7), and the appendix of the state court records (Dkt.8-1),[1] the petition is denied.

### Background and Procedural History

On the evening of January 16, 2016, Mr. Cabral was driving his 2004 Dodge Durango SUV the wrong way on a divided road when his SUV struck a motorcycle driven by John Sorenson.  Dkt. 8-1 at Exh. 7 at 4 (order denying rule 3.850), Exh.

---

[1] The state courts' records are found in an appendix compiled by Respondent at docket 8-1.  The appendix contains 16 separate exhibits.  Record citations will be denoted using docket number 8-1 followed by the exhibit number and, if necessary, the page number.

16 (plea and sentencing transcript).[2]  Several eyewitnesses, including Mr. Sorenson's friend riding a motorcycle next to him, confirmed Mr. Cabral was driving the wrong way.  *Id.* at Exh. 7 at 4.  Mr. Sorenson was thrown into the air and landed in or near the street.  *Id.* at Exh. 7 at 4.  Mr. Cabral stepped out of his SUV, walked over to Mr. Sorenson, and tugged Mr. Sorenson's arm while he yelled, "Who is going to pay for my f***ing truck?"  *Id.* at Exh. 7 at 5–6.  Mr. Sorenson died that evening as a direct result of his injuries.

At the scene, Mr. Cabral admitted to drinking at a bar in Dunedin earlier that evening before the collision.  *Id.* at Exh. 7 at 4.  When Mr. Cabral was taken to the hospital, he was crying and slurring his speech and smelled of alcohol.  *Id.* at Exh. 7 at 5, 10.  His blood alcohol level was 0.257, well above the Florida legal limit of 0.08.  *Id.* at Exh. 7 at 5, 10, Exh. 16 at 17.  Later that evening, his breath registered 0.156 and 0.150.  *Id.*

In December 2016, Mr. Cabral pleaded guilty pursuant to a written plea agreement to DUI manslaughter and was sentenced to twelve and a half years in state prison with a four-year minimum mandatory, to be followed by two years and six months of probation.  *Id.* at Exh. 2 (plea agreement), Exh. 3 (judgment and sentence).  His timely filed motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 was summarily denied.  *Id.* at Exhs. 4, 5, 6, 7, 9.  He

---

[2] Attached to the postconviction court's order are depositions of various witnesses.

claimed his plea was rendered involuntary based on five grounds of ineffective assistance of counsel. *Id*. at Exhs. 4, 6.[3]

Petitioner appealed the denial of his rule 3.850, and the state appellate court per curiam affirmed without opinion. *Id*. at Exhs. 10, 13; *Cabral v. State*, No. 2D18-2318, 2019 WL 1294129 (Fla. 2d DCA Mar. 20, 2019). Raising the same first five grounds of ineffective assistance of counsel as asserted in his rule 3.850 motion, Petitioner timely filed the instant petition for habeas relief. There are no issues concerning state exhaustion.

## Ineffective Assistance of Counsel

Ineffective assistance of counsel is established by a showing of both 1) counsel's deficient performance and 2) prejudice resulting from the deficient performance. *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984). Deficient performance relative to a plea of guilty is measured by the lesser duty owed by counsel to a client who does not go to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To establish *Strickland* prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

---

[3] A sixth ground alleged cumulative error in view of the first five grounds. Dkt. 8-1 at Exhs. 4, 6.

*Lockhart*, 474 U.S. 52, 58–59 (1985); *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994).

In the habeas context, this Court's review is "doubly deferential" as governed by both *Strickland*'s "high bar" and 28 U.S.C. § 2254(d), as amended by the AEDPA.[4] *Harrington v. Richter*, 562 U.S. 86, 105 (2011).[5] "[T]he question is not whether counsel's actions were reasonable [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. The state court's adjudication of the claims on the merits may be subject to habeas relief only where the decision was either 1) "contrary to, or involved an unreasonable application of," clearly established federal law or 2) based on an unreasonable determination of the facts. 28 U.S.C. §2554(d). Because the state postconviction court in Mr. Cabral's case recognized and applied *Strickland*, the "contrary to" test cannot be met.

The two remaining considerations are whether the postconviction court made an "unreasonable application" of *Strickland*[6] or an "unreasonable determination" of the facts. Given the presumption of correctness of the state court's determination of facts, *see* 28 U.S.C. 2254(e)(1), and the due deference to

---

[4] AEDPA is the Anti-Terrorism Effective Death Penalty Act of 1996.
[5] *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) ("doubly deferential standard"); *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("double deference").
[6] This Court does not make an independent assessment of whether counsel's actions were reasonable. *See Putnam v. Head*, 268 F.3d 1223, 1244 n. 17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

the state court's decision, if not unreasonable, *see Renico v. Lett*, 559 U.S. 766, 779 (2010), each ground must be analyzed by first examining the state court's decision as limited by the "double deference" standard of review as discussed above.[7]

**Ground One**:

Mr. Cabral alleges counsel failed to explain "the parameters of the plea." Dkt. 1 at 6. Specifically, he claims he did not know he would receive either a four-year minimum mandatory or a probationary term upon release. He did not know he could dispute the terms of the plea agreement during the plea colloquy. *Id*.

The state postconviction court found the record conclusively refuted this claim. Dkt. 8-1 at Exh. 7 at 3. Before taking the plea, the court recessed Petitioner's case so that he could be advised by counsel. *Id*. at Exh. 7 at 3, Exh. 16 at 4. Petitioner was advised, signed the plea agreement, and his case was called. During the plea colloquy the state court advised him of the terms of the plea including the four-year minimum and the probationary term to follow the prison sentence. *Id*. at Exh. 7 at 3, Exh. 16 at 6–8. Petitioner testified counsel had gone over the plea form in its entirety with him. *Id*. at Exh. 7 at 3, Exh. 16 at 11. Petitioner affirmed he understood the terms of the plea agreement the read and

---

[7] That the state appellate court affirmed without an opinion does not lessen the deference due. *Wright v. Moore*, 278 F.3d 1245, 1254 (11thCir. Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom*, *Wright v. Crosby*, 538 U.S. 906 (2003). A federal claim presented to and denied by a state court is considered adjudicated on the merits absent "any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.

signed, which clearly recorded the terms of the sentence. *Id*. at Exh. 7 at 4, Exh. 16 at 10–11.  The postconviction court concluded counsel's performance was not deficient.

The postconviction court also found there was no reasonable probability Petitioner would have "proceeded to trial and not entered a plea but for counsel's alleged failure to inform him of the plea agreement." *Id*. at Exh. 7 at 4.  The court summarized the "compelling testimony" supported by depositions as follows:

> John Wilcox, an officer who was off-duty at his home near the accident, testified in his deposition that he went outside his home to help when he heard the accident and saw that the Defendant's car left marks in the road indicating that the car had been traveling northbound in the southbound lanes of County Road 1, which is divided by a median.  In his deposition, Witness William Smith testified that he was driving to work when he saw the Defendant's car driving northbound in the southbound lane of County Road 1.  Mr. Smith saw that Defendant was driving the wrong way towards car and motorcycles and attempted to turn around and warn them, but the Defendant had already hit them by the time Mr. Smith was able to turn his car around.  Mr. Smith saw the victim fly through the air when the Defendant hit his motorcycle.  Although it was not disputed that the Defendant was the only person driving the vehicle, Mr. Smith was able to put the Defendant behind the wheel.  Mr. Smith observed the Defendant acting belligerently, pulling the victim by the arm and asking, "Who is going to pay for my "f-ing truck?" which the State would have used to prove that the Defendant was impaired.  Deputy Wilheim testified in his deposition that, after the Defendant admitted to Deputy Blair that he had been drinking, and discovered that the Defendant had been drinking at "The Blur" bar in Dunedin.  Nurse Stephanie Stricker would have testified that the Defendant appeared drunk when she was drawing his blood because he was crying, slurring his speech, and smelled like alcohol.  Deputy Eastty would have been able to testify that the Defendant was transported from the scene of the accident to the hospital, where his medical blood alcohol level was 0.257.  When the Defendant later

>provided a breath alcohol sample, his breath alcohol level was 0.156/.150, which is over the legal limit of 0.08.

*Id*. at Exh. 7 at 4–5 (record citations omitted). In addition to this testimony, Mr. Cabral agreed to the sentence he received. *Id*. at Exh. 7 at 5, Exh. 16 at 9–16. Finally, the court found he would have faced a fifteen-year sentence with a four-year mandatory had he proceeded to trial. *Id*. at Exh. 7 at 5. No *Strickland* prejudice was shown. *Id*.

In addition to the plea agreement and transcript, Mr. Cabral admits in his petition he was "confronted" with the terms of the plea deal prior to the entry of the plea (Dkt. 1 at 6), and after toiling over the offer, he took the plea "to save embarrassment and pain for himself, his family and the family of the man who lost his life as a result of this unfortunate accident." Dkt. 1 at 10. These statements contradict his alleged lack of knowledge regarding the terms of the plea. The postconviction court did not unreasonably apply *Strickland* or unreasonably determine the facts.

**Ground Two**:

Petitioner claims counsel failed to seek a downward departure or inform him he could have received a lesser sentence based on mitigating factors. Dkt. 1 at 8. Had he known such a motion could be filed, he would not have pled. *Id*.

The state postconviction court observed the statutory mitigating factors---1) the crime was committed in an unsophisticated manner, 2) the crime was an

isolated incident, and 3) the defendant showed remorse--- are typically present in all DUI manslaughters. Dkt. 8-1, Exh. 7 at 6. In so noting, the postconviction court reasoned that Mr. Cabral's case was not unique and, consequently, did not "miss[] a genuine opportunity at receiving a downward departure sentence." *Id*. Because counsel raised the idea of a downward departure sentence on the record before the plea colloquy began, the postconviction court found counsel's performance was not deficient. Dkt. 8-1 at Exh. 7 at 6, Exh. 16 at 5. Nor was Petitioner found to be prejudiced because he received a prison term two and a half years under the statutory maximum. Dkt. 8-1 at Exh. 7 at 6. The postconviction court did not unreasonably apply *Strickland* or unreasonably determine the facts.

**<ins>Ground Three</ins>:**

Petitioner claims counsel was ineffective by failing to inform him his highly prejudicial ("impudent") statement made while inebriated to the police could have been suppressed and not be used against him at trial. Dkt. 1 at 10. Although not identified in the petition, his statement as asserted before the postconviction court was "Good. He deserved it." upon learning Mr. Sorenson had died. Dkt. 8-1 at Exh. 6 at 8. Petitioner alleged he was too intoxicated to have made that statement voluntarily.

The postconviction court found counsel cannot be faulted for failing to pursue a meritless motion. Dkt. 8-1 at Exh. 7 at 7. Because the statement was

8

relevant to show Mr. Cabral was under the influence, no legal ground for suppression existed. *Id.*; s*ee United States v. Morgan*, No. 5:15-cv-52-MW/CJK, 2017 WL 5799230, at *4 (N.D. Fla. Oct. 25, 2017) (holding counsel not ineffective for failing to pursue meritless issue). Based on the compelling evidence as set forth in the order denying postconviction relief, no prejudice was shown. Dkt. 8-1 at Exh. 7 at 4–5, 7. The postconviction court did not unreasonably apply *Strickland* or unreasonably determine the facts.

**Ground Four:**

Petitioner contends counsel failed to provide "all the mitigating evidence to him." Dkt. 1 at 12. He claims he needed 1) the results of the deceased's driver's blood alcohol level and 2) an expert crash reconstructionist to prove the damaged SUV showed damage on the driver's side, which would disprove a head-on collision. This claim was considered by the postconviction court as counsel's failure to investigate.

In denying this ground, the postconviction court found reasonable counsel would not be led to investigate further:

> In addition to the overwhelming evidence showing that the Defendant struck and killed the victim while the Defendant was driving the wrong way, the Court notes that the evidence proposed by the Defendant would have actually been incriminating, not exculpatory. It is a generally accepted fact that fenders are located on the front and back of vehicles. Damages to a front fender would tend to support the State's case showing that there was a head-on collision as a result of Defendant

>driving the wrong way, and would not necessarily support the Defendant's contention that the victim "T-boned" him.

Dkt. 8-1 at Exh. 7 at 8.  The court deemed speculative the suggestion that a toxicologist could show the victim caused the accident.  *Id*.  Having determined counsel's performance was not deficient, the court also found no prejudice because Petitioner affirmed under oath at the plea hearing he was giving up the right to call witnesses.  Dkt. 8-1 at Exh. 7 at 9, Exh. 16 at 9–16.  The postconviction court did not unreasonably apply *Strickland* or unreasonably determine the facts.

**Ground Five:**

Petitioner alleges counsel failed to locate an eyewitness "John" with favorable information, specifically Petitioner was not traveling the wrong way on the divided highway.  Dkt. 1 at 14.  Not only did counsel fail to locate the witness, who was an alleged friend of Petitioner's aunt, but Petitioner alleges counsel instructed him not to try to locate the witness.

The postconviction court found that "given the evidence against the Defendant, it appears to this court that a reasonable counsel would have viewed investigating 'John' as a witness to be a fruitless endeavor."  Dkt. 8-1 at Exh. 7 at 10.  The court reiterated the overwhelming evidence against Petitioner and found no prejudice based on the thorough plea colloquy.  *Id*.  Mr. Cabral failed to show the state court's decision was an unreasonable application of *Strickland* or an unreasonable determination of the facts.

The petition for the writ of habeas corpus (Dkt. 1) is denied. The Clerk shall enter judgment against Petitioner and close the case.

### Certificate of Appealability and Leave to Appeal *in Forma Pauperis*

Petitioner is not entitled to a certificate of appealability ("COA") because he cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Having been denied a COA, Petitioner is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on October 9, 2020.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Petitioner, *pro se*
Counsel of Record